JUDSON JONES *vs.* CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.

May 16, 1890.

**Evidence—Form of Question to Expert.**—The trial court may permit a question to an expert witness, calling for his opinion, to refer him to the testimony in the case, if he has heard it, instead of stating the facts it tends to prove; but in such case the question must require the witness to assume the testimony to be true.

**Same—Opinion of Physician.**—A physician may give his opinion of the physical condition of a patient after an examination of him, though it be based in part on the statements of the patient made at the time, as to his sufferings and symptoms.

**Carrier—Injury to Passenger in Baggage–Car—Contributory Negligence.**—The fact that a passenger on a railroad is, when injured, in a baggage-car, in which, by the rules of the company, passengers are not permitted to be, is not negligence on his part that will defeat his recovery, unless it contributed to or aggravated the injury.

**Same—Rule Habitually Disregarded.**—The fact that a railroad company has a rule prohibiting passengers being in its baggage-cars does not absolve it from the duty of care towards passengers who are in a baggage-car, if it habitually disregards the rule, and permits passengers to ride in such cars. Following *Jacobus* v. *St. Paul & Chicago Ry. Co.*, 20 Minn. 110, (125.)

Action brought in the district court for Blue Earth county, to recover damages for personal injuries. At the trial, before *Severance,* J., the plaintiff introduced evidence tending to prove the following state of facts: One of defendant's regular way trains was a mixed train, and on October 16, 1886, this train was made up of 21 freight

cars and a "combination" car, divided by a cross partition into two compartments, one for passengers and one for baggage. This car had steps and a door at each end, and a door in the partition between the two compartments. When the train reached Lake Crystal, the combination car was detached and left standing in front of the station, and the rest of the train was run into the yard for the purpose of switching cars to and from it. The plaintiff, having purchased a ticket for passage from Lake Crystal to Brown Centre, entered the combination car by the steps at the end of the baggage compartment, (which was the rear end and nearest to the station,) and was passing through it to the passenger compartment, when he stopped, near the middle of the baggage compartment, to listen to the conversation of two men in that compartment. While he was thus standing in the baggage compartment, the rest of the train was backed down to be coupled to the combination car, and struck the latter car with such force that plaintiff received a "severe wrench or twist," causing him to feel as if he "was broken in two across the groin and the lower part of the back," and he had all he could do to keep from falling. The injuries resulting to plaintiff from the shock were (among others) incomplete inguinal hernia and a debility precluding him from speaking at length as required by his vocation of preacher and temperance lecturer. Dr. Daniels, a witness for plaintiff, who had made several examinations of him, was asked whether, judging from such examinations, "including what the plaintiff said in such examinations relative to his condition," the plaintiff was suffering from disease or injury to the spinal cord. The question was allowed, against defendant's objection, and the defendant excepted. Dr. Warner, being called as a witness for defendant, having testified that he had heard the testimony of plaintiff's medical witnesses as to the hernia, was asked the following question, which, on plaintiff's objection, was excluded, the defendant excepting: "Taking the testimony of these witnesses, having in mind what it shows as to this difficulty having progressed, considering this testimony, what have you to say as to the probable progression of it? What is the probability as to this difficulty developing into a complete hernia, under ordinary circumstances?"

The defendant also introduced evidence tending to prove that a rule of the company prohibited passengers from entering the baggage compartment, and that a printed copy of this rule was posted there; but it did not appear that plaintiff saw or knew of the rule, and there was evidence that passengers used the baggage compartment as a smoking-room.

The plaintiff had a verdict of $2,000, and the defendant appeals from an order refusing a new trial.

*James H. Howe* and *Lorin Cray,* for appellant.

*Daniel Buck* and *Horace Austin,* for respondent.

GILFILLAN, C. J.   In the various hypothetical questions put by the plaintiff to his expert medical witnesses, to elicit their opinions, we do not find that any fact was assumed that there was not evidence in the case fairly tending to prove.   The rule is that for the purpose of a question to an expert witness, to call out his opinion, the party may assume as facts what the evidence tends to prove; and we do not see that the plaintiff was permitted in any instance to depart from this rule.   The question in such a case usually states the facts assumed to be proved.   Strictly, perhaps, it ought to.   But for convenience the court may, and often does, permit the hypothesis to be put by referring the witness to the testimony if he has heard it, instead of stating the facts.   But in such case the question must require the witness to assume the testimony to be true, and not leave it for him to determine whether any of it be true or not; for that would commit to him the function of the jury.   In this particular the question to the defendant's witness Dr. Warner was objectionable. It neither stated the facts as the basis for his opinion, nor did it require him to assume the testimony which it referred to, and on which his opinion was asked, to be true.   It left him to determine what of it he should consider true, and what false.   It was therefore properly excluded.

When a physician is called on to determine upon the condition or ailment of a patient, he must oftentimes do so, of necessity, from what the patient tells him of his present physical sufferings or symptoms.   In many cases it would be impossible to prove what the ailment is, if such statements of the patient be excluded, or if the physi-

cian may not testify to his opinion, based in part, at least, on the statements of the patient. For this reason, statements of an injured person of present pains or symptoms (when the question of his then condition or ailment is in issue) are always competent. The question asked plaintiff's witness Dr. Daniels was proper.

If, as the jury has found, and as the evidence justified it in finding, the negligence of the defendant caused the injury to plaintiff, the fact that he was at that time in the compartment of the car devoted to carrying baggage, and that it was against the rule of the company for passengers to be there, would not necessarily prevent a recovery. His presence there would not, of itself, be contributory negligence that would bar his right to recover. Negligence on the part of a person injured will not have that effect unless it contributed to his injury. It is difficult to see from the evidence how the fact that plaintiff when injured was standing in the compartment of the car used for baggage, instead of in the compartment used for carrying passengers, tended to cause or aggravate the injury. The shock to the car which caused the injury must have been as great in one part of the car as in another. We cannot say that it is negligence in one taking passage on a railroad car to stand for two or three minutes (the car standing still at the time) instead of at once taking a seat. In this case, certainly, these were questions for the jury. Nor can it be said, under the evidence in the case, that the plaintiff was wrongfully in the baggage compartment of the car, so that the defendant did not owe him the duty of care which a common carrier of passengers owes to his passengers. Even though there was a rule of the defendant posted up in the baggage compartment forbidding passengers to be there, if it was not enforced, if the defendant, through its servants in charge, habitually disregarded the rule, and permitted passengers to be and ride in that compartment, so that a passenger might assume the rule to have become obsolete,—it certainly could not treat him as a wrong-doer for passing through it to reach that part of the car appropriated to passengers. *Jacobus* v. *St. Paul & Chicago Ry. Co.*, 20 Minn. 110, (125.) There was evidence from which the jury might find this condition of things. The jury found specially that the rule was not in force at the time, which, read in

connection with the evidence, must mean that the rule posted up was not enforced, but was disregarded by the defendant and its servants. This being so, it was immaterial that plaintiff had or had not notice that such a rule had been posted up. No other point in the case requires special mention.

Order affirmed.