## WYNONA C. ARCHER, Respondent, v. UNION PACIFIC RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, March 6, 1905.

1. **PASSENGER CARRIER: Who, Passenger and When: Car: Privilege.** (A person, though intending to become a passenger, who uses a station for a lounging room without the expectation of the arrival of a train, cannot claim the high degree of care extended to a passenger; and where a person uses a merely permissive privilege optional with the user, such as occupying a car on a side track, the duty due to such person is no other than the duty one owes to another who may come upon his premises by express or implied invitation. )

2. **NEGLIGENCE: Use of Premises: Invitation: License.** The distinction between an invitation and a license, though difficult often to make, appears to be that the invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or profit of the party using it.

3. **PASSENGER CARRIER: Negligence: Use of Premises: Invitation: Evidence.** Plaintiff was one of a company using a hired car for a going and a returning trip. This car warmed and lighted stood on a side track at the returning terminus with permission to members of the party to use the same between its arrival and departure. The evidence relating to plaintiff's injury while returning to the car in the interval is considered and held insufficient to support an action, since plaintiff was at the time not a passenger and the defendant was not guilty of negligence regarding the defect in a frog in its track, and the plaintiff was guilty of contributory negligence in leaving a smooth path to cross the track in a hurry to get in the car.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED.

*N. H. Loomis, R. W. Blair* and *I. N. Watson* for appellant.

(1) Unless plaintiff was a passenger at the time she was injured, she cannot recover under the allegation of the petition. Brown v. Scarbro, 97 Ala. 316. (2) We contend that plaintiff was not a passenger at the time of her injury, but was a licensee. The law applicable to this state of facts is well stated in Phillips v. Railroad, 124 N. C. 123; Hutchinson on Carriers, sec. 562; Dowd v. Railroad, 84 Wis. 105; Benson v. Traction Co., 20 L. R. A. 714; Beach on Contributory Negligence, sec. 51; De Bald v. Railroad, 14 Atl. Rep. 576; Redigan v. Railroad, 28 N. E. 1133; Welch v. McAllister, 15 Mo. App. 492. (3) Our contention is that there was no evidence to submit this issue of negligence to the jury and manifest error was committed by the court in doing so.

*William T. Jamison* for respondent.

(1) Negligence in the construction of the frog and guard rail is proven by an abundance of testimony of defendant's own employees. This question of fact having been properly submitted by the court to the jury, the finding of the jury, there being sufficient testimony upon which to base their verdict, will not be by this court interfered with. It is no doubt useless to cite authorities on this proposition to this court. Strode v. Abbott, 102 Mo. App. 169; Gribble v. Everett, 98 Mo. App. 32; Contracting Co. v. Roofing Co., 98 Mo. App. 78; Woody v. Railroad, 104 Mo. App. 678; Chapin v. Stahlmuth, 102 Mo. App. 299; State v. Peebles, 178 Mo. 475; State v. McKenzie, 177 Mo. 699; Merton v. Case Co., 99 Mo. App. 630. (2) Defendant was guilty of gross negligence in not properly lighting said yards and tracks; plaintiff had been invited and directed to go to the car in question in the nighttime by defendant's agents, and relied upon their direction, which as

a matter of law she had a right to do. The plaintiff did not know of their dangerous condition, but thought the tracks and yards were "smooth and nice." (3) The court did not, therefore, err in submitting to the jury by instruction numbered 2, for the plaintiff, the question of negligence in failing to light said yards and track. There was abundant evidence upon which to rest the verdict of the jury, and it being based upon sufficient testimony, will not be by this court disturbed. Strode v. Abbott, 102 Mo. App. 169; Gribble v. Everett, 98 Mo. App. 32; Contracting Co. v. Roofing Co., 98 Mo. App. 78; Woody v. Railroad, 104 Mo. App. 678; Chapin v. Stahlmuth, 102 Mo. App. 299; State v. Peebles, 178 Mo. 475; State v. McKenzie, 177 Mo. 699; Merton v. Case Co., 99 Mo. App. 630.

ELLISON, J.—The plaintiff brought this action for damages resulting to her on account of personal injuries received by her (as she alleges) through the negligence of defendant. She prevailed in the trial court.

It appears that in February, 1901, the Ancient Order of Pyramids of Kansas City, Missouri, engaged an ordinary passenger car of defendant in which defendant was to convey a number of members to Topeka, Kansas, and return. The party (including plaintiff) arrived at Topeka about six o'clock in the evening, when they proceeded to a hall in the city. The car was taken off of the main track and set in on a side, or "house track," about two hundred and fifty feet from the station, where it was to be "picked up" by the train passing Topeka at an early hour the next morning and brought back to Kansas City. The defendant's division superintendent telegraphed the station agent at Topeka where to place the car during the night. The dispatch also read: "See these people and see if there is anything we can do for them. . . . Car

repairer will have instructions to keep the car warm and clean.''

On the arrival at Topeka the station agent stated to representatives of the party, in the presence of plaintiff, that any time they wanted to go to it, the car would be lighted and warm. Plaintiff stated that her understanding was that the car was going to be set aside in the switch yards where it could be occupied by any of the party at any time during the night. Between four and five o'clock in the morning, which, at that season, was before daylight, plaintiff with about twenty others of the party left the hall and proceeded to the car. She attempted to pass around the end of the car from the south to the north side of the track when she caught her heel in a switch frog which caused her to fall and receive serious injury.

Plaintiff was a passenger on defendant's road while going to and returning from Topeka. But she was not a passenger, and defendant owed her no duty as such, while she remained in that city, except for such reasonable period before train time as she would be at or in defendant's station building in order to get aboard the train upon which she was to return. Save in exceptional instances, a person though intending to become a passenger, who uses the station as a lounging room without expectation of arrival of a train, cannot claim the high degree of care extended to passengers. The car was kept lighted and heated so that if plaintiff and others preferred to return to it during the night instead of remaining in the city proper, or instead of going to the station itself, they could do so. It was merely for the accommodation of those who preferred that course. It was merely a permissive privilege, optional with plaintiff, and so she stated. Defendant, therefore, owed no duty to them further, at the very most, than the duty any one owes to another who may come upon his premises by express or implied invitation. What is that duty?

In the case of Bennett v. Railway, 102 U. S. 577, it is said that, "the owner or occupant of land, who induces or leads others to come upon it for a lawful purpose, is liable in damages to them, they using due care, for injuries occasioned by the unsafe condition of the land or its aproaches, if such condition was known to him and not to them, and he negligently suffered it to exist without giving timely notice thereof to them or the public." In Carleton v. Franconia Co., 99 Mass. 216, the court said: "The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business being transacted with, or permitted by him, for any injury occasioned by the unsafe condition of the land, or of the access to it, which is known to him, and not to them, and which he has negligently suffered to exist and has given them no notice of it. . . . " Judge GRAY said of that case that it could not "be distinguished in principle from that of the owner of land adjoining a highway, who, knowing that there was a large rock or a deep pit between the travelled part of the highway and his own gate, should tell a carrier, bringing goods to his house at night, to drive in, without warning him of the defect . . . "

It is sometimes difficult to distinguish between an invitation and a mere license to come upon one's premises. This was recognized and adverted to by Judge HARLAN in Bennett v. Railway, supra 584. The distinguished judge quoted from Campbell on Negligence that, "the principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it." We have considered this case as one of invitation in deference to the contention of plaintiff's counsel. But we do not wish to be understood as ruling that the case is anything more than mere permissive license.

As a licensee there would be required of defendant less duty to plaintiff than if she was invited in a sense of benefit to defendant. The case is regarded by defendant's counsel as one of license only and we are cited to the following cases as authority for the position. [18 Amer. and Eng. Ency. of Law (2 Ed.), 1136; Dowd v. Railway, 84 Wis. 105; Welch v. McAllister, 15 Mo. App. 492; Diebold v. Railway, 50 N. J. L. 478.]

In the light of these authorities (whether discussing an invitation or a license) a fuller statement of the evidence, mainly that of the plaintiff herself, will demonstrate that she is without legal standing. It appears, as before stated, that the car was put on a side track (just clear of the main track) about two hundred and fifty feet west of the station house, the ends of the car being east and west. The east end of the car, therefore, faced towards the station and was nearest thereto.

There was an unobstructed, level and smooth cinder walk, twenty-five feet wide, leading on the south side of the track from the station down to the car. Plaintiff with several others came from the south walking north along the street until she came to the station house which was open and lighted and some of the others went in and remained there, but plaintiff and "the crowd" turned west walking along this cinder walk on the south of the track until she got about to the end of the car, when, in order not to wait for those ahead of her who were getting into the car from the south side, she concluded to enter from the north side, and in attempting to cross over the track for that purpose caught her foot in the defective switch frog and fell.

It seems to us to be manifest that defendant, in consideration of the fact that plaintiff was not at that time a passenger, and in consideration of the nature of the duty which defendant owed her, was not guilty of

negligence, notwithstanding the frog in the switch may have been defective.

On the other hand, in consideration of the facts just stated, the plaintiff was herself guilty of negligence. The defendant placed the car on a smooth and unobstructed walk leading directly to the steps of the car; but plaintiff, in her impatience and hurry to get inside (it being cold) chose to attempt to cross over to the other side, when, unfortunately, her heel caught and she fell.

If in the roadway leading to the car there had been a pitfall, or other dangerous obstruction, as illustrated in Carleton v. Franconia Co., supra, into, or over which plaintiff had fallen, she would have just and legal cause of complaint. But she has not such cause when she met an obstruction by leaving the direct course provided by defendant and attempted the indirect way.

The judgment should be reversed. All concur.